# McNamara *et al. v.* Logan.

*Action for Damages for Injury to Minor Employe.*

1. *Action for personal injuries; sufficiency of complaint.*—In an action by an employe of defendants for personal injuries, a complaint, alleging that the causal defect arose from, or had not been discovered owing to the negligence of defendants, or some person in their service, intrusted by them with the duty of seeing that the ways. works, machinery, and plant were in. proper condition, is not bad for failure to state the name of the person so intrusted.

2. *Same; when right of compensation in minor.*—Where the injury to the minor is not fatal, actions may be maintained by both parent and child; sections 2587, 2588, Code 1886, do not' deprive the minor of his own right of compensation for injuries received by him which could not be considered in assessing the damages sustained by the parent.

3. *Same; expert testimony.*—In an action for personal injuries caused by defects in a cross entry in defendants' mine, a witness who has been a miner for 30 years, and is familiar with all the details of mining, and who deposes that he is acquainted with the general construction of cross entries. and that the rule is to have the space between the cars and the wall three feet wide, is competent to give his opinion as to whether it is safe to have such space only a foot and a half wide.

4. *Same; contributory negligence.*—Plaintiff, on being assigned to drive in the entry where he was injured, was told by D., an employe who had charge of the drivers, that the wheels would have to be spragged on down grades, and that he would show plaintiff where to begin spragging. At one place the wall was so close to passing cars as to render spragging dangerous, but plaintiff did not know it. D. was to sprag the wheels on one side, and plaintiff on the other. When they reached the grade D. jumped off to sprag the wheels on his side, and plaintiff made an attempt to do so on his side, but failed, and ran along by the side of the car endeavoring to sprag the wheels, and was crushed between the wall and the car. It was proper *in such case,* to refuse a' peremptory instruction to find for defendants on the ground of contributory negligence on the part of plaintiff.

5. *Same; charge as to defective ways, machinery, &c.*—The court properly refused to instruct that, unless the cars driven by plaintiff were defective, or the width of the cross entry at the point where he was injured was less than is the rule in well-regulated coal mines, defendants should recover, in that the entry itself might have been sufficiently wide. and yet defective. because the tramway was laid so near the wall on the side plaintiff had to sprag as not to allow adequate space between the wall and passing cars.

6. *Same; charge as to risks incident to employment.*—A charge asked by the defendant that it was plaintiff's duty to take into account the

[McNamara et al. v. Logan.]

surroundings and perils attendant on the nature of the service in which he was engaged at the time he received his injuries, is properly refused because it is not limited to such surroundings and perils as were open to plaintiffs observation in the exercise of due care on his part.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. JAMES B. HEAD.

Action by Vadre Logan, by next friend, against McNamara Bros., for personal injuries, alleged to have been inflicted by reason of defendants' negligence.

The first count of the complaint, after alleging the injuries inflicted on the plaintiff, further alleged that "plaintiff's said injuries were caused by reason of defects in the condition of ways, works, machinery, or plant connected with or used in the said business of defendants, to-wit, said cars were defective; said cross entry was defective. The said defects arose from, or had not been discovered and remedied owing to, the negligence of defendants, or of some person in the service of defendants, and intrusted by them with the duty of seeing that the said ways, works, machinery, and plant were in proper condition." The defendants demurred to this count on the ground that said count does not designate the name or position of the person in the service of the defendants whose duty it was to see that the ways, works, and machinery were in proper condition. The court overruled this demurrer, and the defendants interposed five pleas, the first three of which were the general issue in various forms; the fourth, the plea of contributory negligence; and by the fifth the defendants as a further plea alleged that up to the time this suit was brought, Frank Logan, the father of the plaintiff in the present suit, brought suit in the City Court of Birmingham for himself "against the defendants for the identical injuries arising from the identical causes as the ones described in the above complaint, except that Frank Logan sought damages for the injuries to his son only during the minority of his said son; that heretofore said cause for the benefit of Frank Logan was tried in the City Court of Birmingham, and judgment was rendered in the plaintiff's favor, and the amount of the damages awarded has been paid by these defendants; wherefore defendants make this plea in bar to above action." The plaintiff demurred to the fifth plea, on the grounds that the said plea shows (1) that the suit was brought by Frank Logan for his own benefit; (2) that the plea does not show that said suit was brought for the benefit of the present plaintiff; (3) the plea fails to show any satisfaction for the damages claimed by Vadre Lo-

gan in the present suit; (4) that the plea shows that the father sought to recover damages for injuries to his son during the minority of his son; (5) that the plea fails to show that the said suit sought the recovery of other damages than those to said father growing out of said injuries to his minor son. The court sustained these demurrers to the fifth plea, and issue was joined on the remaining pleas. The circumstances of the accident, as well as the tendency of the evidence, are sufficiently shown in the opinion.

Upon the introduction of Taylor Carroll as a witness for the plaintiff, he testified that he had been a miner for about 33 years; that he understood and was acquainted with the general construction of cross entries, having "driven" several himself; and that eight feet wide was the rule for cross entries, where there was a single track; and that it was the rule to have the space between the track and the side of the entry three feet, it being in some places more and in some less than this. Upon this testimony the plaintiff asked the following question: "Is it safe to have as little as a foot, or a foot and a half?" The witness answered it was not. The defendants objected to this question and answer, and moved to exclude them on the ground that the witness was not shown to be an expert on mining construction. The court overruled this motion, refused to exclude the answer, and the defendants duly excepted. Upon the introduction of Ed Carroll as a witness for the plaintiff he testified that the plaintiff took his place as driver in the cross section where he was injured. This witness further testified that he told Mr. Donahue not to put this plaintiff on the car to drive it, "as he was a strange driver, and would get killed. That he had not been there any length of time, and had not driven in the entry; and I told him that he would get the boy killed if he put him there. · · · I told him that when I was leaving the entry. It must have been 10 or 15 minutes before he put Vadre in there." The defendants moved to exclude all this testimony as to what the witness told Donahue, and duly excepted to the court's overruling this motion. It was shown by the testimony that the present cross section was about seven feet wide, and that at the place where the accident occurred the track was within a foot or a foot and a half of the side of the entry. Upon the introduction of all the evidence the defendants requested the court to give the following written charges, and separately excepted to the court's refusal to give each of them: (1) "I charge you, gentlemen, that if you believe the evidence your verdict must be for the defendants." (2) "Unless

you find from the evidence that the tram cars driven by the plaintiff were defective, or that the width of the cross entry at the point at which he was injured was less than is the rule in well-regulated coal mines, your verdict must be for the defendants under the first count of the complaint." (3) "I charge you, gentlemen, that it was the duty of the plaintiff, Vadre Logan, to take into account the surroundings and perils attendant upon the nature of the service in which he was engaged at the time he claims to have received his injuries, [and which were open to his observation in the exercise of due care on his part,] and to bestow such care and watchfulness as an ordinarily prudent person would have exercised under like circumstances in reference to his own safety ; and if you believe from the evidence that Vadre Logan, the plaintiff, when he started from the mouth or opening of number four room alongside of the cars descending by gravity, failed to exercise that degree of care, watchfulness, and caution in respect of his own safety in view of the surroundings that an ordinarily careful and prudent person would have exercised under like circumstances, then you must find in favor of McNamara Bros." The sentence in brackets in the third charge was not in the charge as originally asked, but the court offered to give the said charge if the defendants would insert the said sentence as it is copied above in the charge. The defendants refused to insert the words, and the charge was therefore refused.

J. Q. COHEN, for the appellants.—The court erred in overruling demurrer number two to the first count of the complaint.—*H. A. & B. R. Co. v. Dusenberry*, 94 Ala. 413. The court erred in overruling demurrer number three to the first count of the complaint.—*M. & O. R. R. Co. v. George*, 94 Ala. 199. The court should not have sustained the demurrer to the defendants fifth plea. The complaint in this suit sought to recover damages for the injury to the plaintiff during the entire prospective life of the boy, not only from the time he was twenty-one years old. on, but also during his minority. The plea sets up that the father had already recovered for the *injury* to his child during his minority, not that he sought simply to recover the doctor bills, etc. Sections 2587 and 2588 of the Code of Alabama are taken from the acts of Alabama 1884–5, page 99.

This act is split up into two sections of the Code. It is true section 2587 of the Code 1886, does not say that but one suit shall be maintained, but section 2588 does say that but one suit can be maintained, and that is clearly the legislative

intent as is distinctly shown by the act on page 99 of the acts of 1884-5. The act of January 23rd, 1885, provides that either in case of injury or death but one suit can be maintained. Sections 2587 and 2588 of the Code 1886 are a substantial reproduction of the language of the act of 1885.

In the construction of the Code the manifest purpose to express in general words the substance of former statutes must be borne in mind, and that two suits could be maintained for the same injuries can not be implied from paragraph 2587 because the words of the act limiting the number of actions was left out in said paragraph.—*Posey v. Pressly*, 60 Ala. 243 ; *Williams v. State*, 55 Ala. 166. These two sections should be construed as one section. In re-enacting substantially in the Code statutes which had received a judicial construction, the legislature is presumed to have known and to have intended to adopt that construction. *O'Byrnes v. State*, 51 Ala. 25 ; *Ex parte Mathews*, 52 Ala. 51 ; *Ex parte The State in re Long*, 87 Ala. 46 ; *Posey v. Pressley*, 69 Ala. 243. That but one suit can be maintained is expressly decided in this State in the case of *South & North Ala. R. R. Co. v. Donovan*, 84 Ala. 147. The complaint seeks to recover during the entire life-time of the plaintiff while the father's complaint sought to recover damages for the identical injuries during the minority of the boy. Even if the father's camplaint had sought damages only *per quod servitium amisit*, plaintiff in this case could not have recovered for the result of his injuries during the same period ; he might have recovered for pain and suffering, but not on account of any diminution of the value of his labor during his minority, as his father had already recovered for that under the pleadings. Clearly the law does not contemplate and never intended that there should be two recoveries for the same thing. The court erred in overruling demurrer number two to first count of plaintiff's complaint.—*H. A. & B. R. R. v. Dusenberry*, 94 Ala. 413. The court erred in overruling demurrer number "three" to the first count of plaintiff's complaint. *Mobile & O. R. R. Co. v. George*, 94 Ala. 199. As to the third assignment of error, the court should not have sustained the demurrers to the defendants fifth plea. The court should have given the general charge for the defendant as to the first count of the complaint.—*B. M. R'y. Co. v. Hale*, 90 Ala. 8 ; *Thompson v. Duncan*, 76 Ala. 334 ; *Ricketts v. Birmingham Street R'y. Co.*, 85 Ala. 600. Charge number two requested by defendant should have been given. The evidence shows affirmatively every fact the charge supposes ; there is no evidence that the cars were defective and that

[McNamara et al. v. Logan.]

the cross entry was defective, from the fact that it was too narrow at the point at which the plaintiff was injured. Charge number three requested by the defendant should have been given.—*M. & O. R. R. Co. v. George,* 94 Ala. 199.

BOWMAN & HARSH, for the appellee.—The first count of the complaint is sufficiently definite and does show a "cause for plaintiff having been caught as alleged."—*E. T., Va. & Ga. R. R. Co. v. Watson,* 90 Ala. 41, and authorites cited. It is not necessary that a count based on "defective ways, works, machinery or plant" designate by name and position, the person entrusted by defendant with the duty of seeing that the ways, works, machinery or plant were in proper condition. The complaint follows the language of the statute, and designates the person with as much particularity as is required to be proved. It is sufficient to allege and prove that the negligence was that of some person in the service of the employer and entrusted by him with the duty, etc. Defendant ought to know to whom such duty has been entrusted. The court properly sustained plaintiff's demurrers to defendant's fifth plea. The plea taken strongly against the pleader admits that the suit at bar was instituted before the suit by the father. That being true, plaintiff's suit was rightfully begun and the father could not defeat it by a subsequent action.—*Pratt Coal and Iron Co. v. Brawley,* 85 Ala. 371. The infant and father could before the passage of the statute, (Acts Ala. 1884–5, 99,) maintain separate and concurrent actions for damages arising to each by reason of personal injuries to the infant.—*S. & N. Ala. R. R. Co. v. Donovan,* 84 Ala. 141. The pain and suffering of the infant and his permanent disability could no more enter into the damages in the suit by the father, than if he were a total stranger. By natural right compensation for such was the property of the infant and of him alone. The father recovered his own damages, viz: expenses of treatment, etc., and loss of services, with probable compensation for injury to his own feelings. Before that time if an infant were killed, only the personal representative could sue and the proceeds of the suit were distributed. The codifiers made two sections of the act and separated the two classes of cases; section 2587 covering injuries not resulting in death, merely says that the father may sue and does not prohibit a concurrent suit by the infant, nor does it any way refer to such suit; section 2588 covering death cases only, provides for a suit by the father or mother, or personal representative, and then a suit by a father or mother is a bar to a suit

[McNamara et al. v. Logan.]

by the personal representative.—*Propst v. Georgia Pacific Railway Company*, 83 Ala. 519; *Mead v. Larkin*, 66 Ala. 87.

Witness Taylor Carroll was qualified as an expert. He had been a miner thirty-three years; had driven (constructed) cross entries, and had observed them since he had been a miner, viz: thirty-three years. He swore that he was "acquainted with the general construction of cross entries." *R. & D. R. R. Co. v. Weems*, 97 Ala. 270. The general charge should not have been given.—*C. R. R. & B. Co. of Ga. v. Roquemore*, 96 Ala. 236. The charge was properly refused for several reasons, viz: Even if the cross entry was wide enough as a whole, yet the track was laid too near the room side so as not to leave a sufficient space on that side as the plaintiff's evidence tends to show. While the doings of careful men generally about a particular thing is proper to be given in evidence as tending to show negligence *vel non* in a defendant, yet such evidence can not be conclusive, especially in a limited business like mining. It can never be said that merely because an entry is as wide as those in well regulated mines no recovery can be had as a matter of law on account of defects therein.—*K. C. M. & B. R. R. Co. v. Burton*, 12 S. Rep. 89; *R. & D. R. R. Co. v. Weems*, 97 Ala. 270; *L. & N. R. R. Co. v. Hall*, 87 Ala. 708. Charge number three is bad. The court below offered to give it if defendants would limit the "surroundings and perils" which the charge sought to compel plaintiff "to take into account," to 'such surroundings and perils as were open to his observation in the exercise of due care. Defendant refused to make the limitation and the court properly refused the charge.—*Ga. Pac. Rwy. Co. v. Davis*, 92 Ala. 300; *M. & O. R. R. v. George*, 94 Ala. 199.

McCLELLAN, J.—Vadre Logan prosecutes this action by next friend to recover damages for personal injuries of a permanent nature sustained by him while in the service of McNamara Bros. in consequence of a defect in the condition of the ways, works, machinery or plant connected with or used in the business of the defendants. The complaint avers, in the language of the statute, that the causal defect "arose from or had not been discovered and remedied owing to the negligence of defendants, or of some person in the service of the defendants, and entrusted by them with the duty of seeing that the said ways, works, machinery and plant were in proper condition." A demurrer to the complaint, assigning its failure to state the name of the person so entrusted, &c., was overruled. We think there was no

[McNamara et al. v. Logan.]

error in this ruling. It was suggested by Clopton, J., in *Mobile & Ohio Railroad Co. v. George*, 94 Ala. 199, that good pleading might require a complaint under subdivision 3 of section 2590 of the Code counting on the negligence of a person to whose orders the plaintiff was bound to conform and did conform. &c., &c., to state the name of such person, but a decision of the point was expressly pretermitted. Without committing ourselves now to either view of that question, it is safe to say that there are considerations which would lead us to hold such averments necessary in the present complaint, drawn under sub-section 1 of the act referred to, which do not apply to a complaint under sub-section 3. And it is a noteworthy fact that the suggestion of Judge Clopton with reference to a complaint under this sub-division, was not repeated, or at all made to apply, in respect of another count of the complaint in *M. & O. R. R. Co. v. George*, which was drawn under sub-section 1, and did not state the name of the person who had been intrusted with the duty of seeing that the ways, &c., were in proper condition. The injured party has better opportunities for knowing and being able to specify the person to whose orders he was conforming when injured than their common employer. The order is presently or immediately previously given either in person or in such other method as identifies the superior to the inferior employe. This is not true in respect of a defect in the defendant's ways, works, &c. The defect may have arisen years before it worked the injury complained of. And whether so or not, there is not necessarily any relation or connection between the injured employe and the person charged with the duty of seeing that the ways, &c., are in proper condition, and it may well be that the person injured has had no opportunity to ascertain and does not know the name or position of the person intrusted with this duty. The duty itself being one which rests on the master, at least to the extent of committing it to a competent employe, he is supposed to know and generally no doubt does know, the identity of the person to whom it is committed. There is, therefore, no hardship, and no departure from cardinal rules of pleadings in exempting the plaintiff from the averment of the name of such person in actions like this.

The complaint is not offensive to the principles declared in *H. A. & B. R. R. Co. v. Dusenberry*, 94 Ala. 413, as insisted by the 2d assignment of demurrer. There is no conjunctive or disjunctive averment of several causes of action in one count, but the averment of one cause of action, the negligence of the defendants whereby defects producing the

[McNamara et al. v. Logan.]

injury existed in their ways, works, machinery and plant. The use of a *videlicet* before the specification of defects in the cross entry and the tram cars, respectively, was notice to defendant that the plaintiff did not assume the burden of proving the specification as laid, and without this the averment of negligence and consequent defects was sufficient. *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241.

We are not concerned in this case by the act of February 23, 1885, to allow "parents or personal representatives of a minor child to sue . . for a wrongful act or omission causing any personal injury to, or the death of, such minor," nor with judicial expressions as to its construction. The act has been codified, and so materially changed in its codification in respect of the exclusiveness of the parent's or personal representative's right of action as that any construction of it in its original form would be wholly inapplicable now. The whole of the act as codified is in reality embodied in section 2588 of the Code, section 2587 not in fact being referable to this statute at all, but, as appears by the Code itself, is a mere re-enactment of section 2898 of the Code of 1876. The action by the father of the present plaintiff, a judgment in which is pleaded in bar of this action, was under section 2587 of the Code, which, as it stands here, is to be taken as if the statute of 1885 had never been enacted, and, indeed, as if section 2588 of the Code was not in existence. This last section is dependent on 2587 for some of its provisions, but section 2587 is in no wise dependent upon, or expanded or limited by section 2588. It is a law complete within itself, and the whole field of its operation is marked by its own terms. It merely secures to the father and, in certain contingencies, the mother, the right to sue for injuries to a minor child, a member of the family, and in such suit to recover the damages which they themselves—the father or mother, as the case may be—have sustained through the injury of a child whose minority so long and only so long as it continued entitled them to his services and involved reciprocal obligations of care and support. But it is not provided and it was clearly not the intention of the codifiers or the legislature which adopted the Code to provide that the recovery of these, in a sense, special damages by the parent should deprive the minor of his own right of compensation for the injuries he had received and which in no case could be taken into the account in assessing the damages sustained by the parent. The truth manifestly is that the only effect which the act of 1885, as codified, has, is to give the father, and, in the contingen-

[McNamara et al. v. Logan.]

cies named in section 2587, the mother, or the personal representative of a minor *whose death* has been caused by wrong and negligence, the right to recover damages, and to confine the personal representative's right to cases where neither the father nor mother has instituted suit; and even where death ensues, the parent can not sue at all on a cause of action arising under The Employer's Liability Act.—Sections 2590–91 of the Code.   And where the wrong and injury is to a minor, and is not fatal, the law is now as it was before January 23, 1885, if indeed it has ever been otherwise: suits may be maintained both by the parent and the child.—*Pratt Coal & Iron Co. v. Brawley*, 83 Ala. 371; *South & North Ala. R. R. Co. v. Donovan*, 84 Ala. 141.   The fact, therefore, that plaintiff's father had recovered for the injuries the son had sustained to the extent the father, by reason of the son's minority and the mutual duties and obligations resulting therefrom, had sustained damages from said injuries, is no defense to this action; and the plea averring such recovery is not helped out by the consideration that the present complaint, as is insisted, claims damages which are recoverable only by the father, as well as damages which are recoverable alone by the son.   We do not think, in the first place, that the complaint is open to this construction, and if it were, the plea is still bad in that while professing to answer the whole complaint, it in fact answers only a part. *Cox, Hill & Thompson v. C. & W. R. R. Co.*, 91 Ala. 392; *Ala. Gr. So. R. R. Co. v. Tapia*, 94 Ala. 226.   The trial court rightly sustained plaintiff's demurrer to the plea.

We will not review the action of the court below in overruling defendant's motion to exclude from the jury all that the witness Carroll testified he said to Donahue.   Under one count of the complaint that which ascribed plaintiff's injuries to the negligence of Donahue in directing plaintiff to drive in the cross-entry where he was injured—we are not prepared to say that this testimony was "patently illegal or irrelevant," within the meaning of the rule adopted by this court April 13, 1891, and published in 90 Ala.   Hence, that rule applies as the record does not show that the grounds of defendant's objection was specified.

The witness Taylor Carroll had been a coal miner for a third of a century.   His general testimony showed that he was perfectly familiar with the business in all its details, including the "driving" or construction of cross entries, their width, the manner in which tram cars are controlled on down grades in such entries, by "spragging" their wheels, the necessity for the driver to take position between

VOL. C.

the cars and the wall of the entry for this purpose, and block the wheels while the cars are in motion, and the correlative necessity for sufficient space there for this work to be done; and he specially deposed that he was acquainted with the general construction of cross entries, and that the rule was to have the space referred to about three feet in width. Very clearly, we think, this man was an expert and competent to give an opinion as to whether it was safe to have this space as narrow as a foot or a foot and a half.

Plaintiff had for some time been a driver in defendants' mine, but not before the occasion of his injury in this cross entry, and he knew that the cars had to be spragged on down grades, as this was the only way to control their speed and prevent their running against and perhaps over the mule. He knew also that it was the duty of the driver to get off the cars and sprag them while between them and the wall of the entry or tunnel. Upon being put to drive in this entry he was advised by one Donahue, who had charge of himself and all other drivers, that spragging would be necessary, and that he, Donahue, would go with him on the first trip and show him where to begin spragging. At one place along the down grade the wall of the entry was so close to passing cars, according to a tendency of the evidence, as to render spragging perilous, if not impossible with safety. Plaintiff did not know this. Donahue went with him to the entry and preceded the "trip"—the cars being driven by plaintiff—into it. According to plaintiff's evidence, Donahue did not tell him at what point to commence to sprag; but it was Donahue's duty to sprag the wheels on the other side of the cars, and plaintiff, seeing him, by the light or position of his lamp, in the attitude of spragging on that side and being advised by the increased momentum of his cars that the down grade had been reached, jumped off on the other side, as it was his duty to do, for the purpose of inserting sprags in the wheels on that side. He at first missed the wheels and failed to insert the sprags, as is, we infer from the evidence, not an infrequent occurrence. He then ran for some little distance along by the cars endeavoring the while to insert the sprags, until he came to the narrow place before spoken of, where there was not room for him between the cars and the wall and where, in consequence, he was jammed and knocked down under the cars, run over by them, and injured in the manner alleged in the complaint.

On the evidence for the plaintiff this encroachment of the wall beyond the line of safety—this narrowing of the

[McNamara et al. v. Logan.]

space between the wall and passing cars so that it was not sufficient for the passage of persons in safety was a defect in the ways of the defendants. The evidence being in conflict as to whether the entry was dangerously narrow, or the cars dangerously near the wall at that point, the question was, of course, for the jury. The evidence tending also to show that this defect caused the injury, that too was a question for the jury. But it is insisted that the plaintiff on the uncontroverted evidence was guilty of contributory negligence, and upon this theory in the main, the affirmative charge, with hypothesis, was requested by defendants. We do not concur in this position. Although Donahue said he would show plaintiff where to sprag, and did not show him, it was yet plaintiff's duty to sprag the cars when they began to run down grade, he having already been told that spragging was necessary on that grade. Moreover, the driver might well have supposed that Donahue intended to show him where to begin this work by himself assuming a position to do it on the other side of the cars. Nor do we think that plaintiff's running by the side of the cars to sprag them after failing in his first efforts to do so, was negligence, certainly not negligence *in se* and to be so declared as matter of law. Knowing the uses of the space between the cars and the wall, and not knowing that it was so narrow at one point as not to admit of these uses, he had a right to assume that he could safely do what he attempted to do, and in which attempt he would probably have succeeded but for the defect. Assuming the absence of the defect, had he remained on the car, or gotten back on it after the failure of his first effort to sprag the wheels, and been injured in consequence of the wheels not being spragged, there would be much more reason to ascribe contributory negligence to him than exists on the facts of this case. It is not pretended that he saw, or even that he was remiss in not seeing the defect in the condition of the entry as he approached it. Indeed, for aught the record shows, he could not have seen it had he been on the alert to locate it, knowing beforehand of its presence. We have no hesitancy, therefore, in sustaining the trial court's refusal to give the affirmative charge for defendants. There was evidence tending to establish defendants' negligence charged in the complaint, and to say the very least, the evidence going to show contributory negligence was conflicting.

In respect of the existence *vel non* of a defect in the tunnel, the question was not necessarily the width of the whole entry, but the width of the space between cars in that

entry and one of its walls. The entry itself might have been of ample dimensions, yet it would in fact be a defective entry if the tracks of the tramway were laid so unduly near to the wall on the side plaintiff had to sprag as not to allow adequate space between that wall and passing cars ; and the jury might have found this precise state of facts, if they believed defendants' evidence ·as to the width of the tunnel throughout its course and plaintiff's evidence as to the dangerous proximity of passing cars to the wall on one side at a given point. Charge 2, therefore involved a tendency to mislead the jury from a consideration of the width of space on one side of the tramway to a consideration of the gross width of the entry; and for this, if not also for other reasons, it was properly refused.

The criticism of charge 3 suggested by the trial court's offer to give it, if amended by the insertion of certain words is a just one. On the inquiry of negligence one cannot be held to the duty of care in respect of particular circumstances and surroundings unless he knows or has negligently failed to ascertain what those circumstances and surroundings are. One of the material circumstances in the situation with which plaintiff had to deal was the existence of a defect in the entry of which plaintiff was not advised and of which he was not lacking in care in failing to advise himself. Yet charge No. 3 would have authorized the jury to find him guilty of contributory negligence because his conduct was not regulated by reference to this unseen and unknown danger. The charge should at least have hypothesized the interpolation suggested by the trial court; the jury before holding him responsible for not seeing the defect should at least have found that it was "open to his observation in the exercise of due care on his part."

Affirmed.